No. 23-60167

In The
# United States Court of Appeals
For The Fifth Circuit

ILLUMINA, INC. AND GRAIL, INC.,

*Petitioners,*

v.

FEDERAL TRADE COMMISSION,

*Respondent.*

PETITION FOR REVIEW OF
AN ORDER OF THE FEDERAL TRADE COMMISSION

## PETITIONERS' MOTION TO EXPEDITE APPEAL

SUBMITTED BY:

David R. Marriott
Christine A. Varney
Sharonmoyee Goswami
Michael J. Zaken
Jesse M. Weiss
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
Worldwide Plaza
New York, NY 10019
Telephone: (212) 474-1000

Michael G. Egge
Marguerite M. Sullivan
Anna M. Rathbun
David L. Johnson
LATHAM & WATKINS LLP
555 Eleventh Street NW
Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200

Alfred C. Pfeiffer
LATHAM & WATKINS LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600

April 5, 2023

# <u>CERTIFICATE OF INTERESTED PERSONS</u>

No. 23-60167 Illumina, Inc. v. Federal Trade Commission

The undersigned counsel of record certifies that the following listed persons

and entities as described in the fourth sentence of 5th CIR. Rule 28.2.1 have an

interest in the outcome of this case.  These representations are made in order that the

judges of this Court may evaluate possible disqualification or recusal.

**Appellee:**
Federal Trade Commission

**Counsel for Appellees:**
Joel Marcus-Kurn
FEDERAL TRADE COMMISSION
600 Pennsylvania Ave., NW,
Washington, D.C. 20580
(202) 326-3350
jmarcuskurn@ftc.gov


**Petitioners:**
Illumina, Inc.

**Counsel for Petitioners:**
David R. Marriott
Christine A. Varney
Sharonmoyee Goswami
Michael J. Zaken
Jesse M. Weiss
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
Worldwide Plaza
New York, NY 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

GRAIL, LLC

Michael G. Egge
Marguerite M. Sullivan
Anna M. Rathbun
David L. Johnson
LATHAM & WATKINS LLP
555 Eleventh Street NW
Suite 1000
Washington, D.C. 20004
Telephone:  (202) 637-2200

Alfred C. Pfeiffer
LATHAM & WATKINS LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111-6538
Telephone:  (415) 391-0600

**Other Interested Parties:**
Illumina, Inc. has outstanding securities
in the hands of the public, but no parent
companies, subsidiaries, affiliates, or
companies own at least 10% of
Illumina, Inc.'s stock, which have any
outstanding securities in the hands of
the public.

/s/ *David R. Marriott*
David R. Marriott
Christine A. Varney
Sharonmoyee Goswami
Michael J. Zaken
Jesse M. Weiss
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
212-474-1000
*Attorneys for Petitioner, Illumina, Inc.*

Michael G. Egge
Marguerite M. Sullivan
Anna M. Rathbun
David L. Johnson
LATHAM & WATKINS LLP
555 Eleventh Street NW
Suite 1000
Washington, D.C. 20004
(202) 637-2200

Alfred C. Pfeiffer
LATHAM & WATKINS LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111-6538
(415) 391-0600
*Attorneys for Petitioner, GRAIL, LLC*

Pursuant to Rule 27 of the Federal Rules of Appellate Procedure and this Court's Rule 27.5, Petitioners Illumina, Inc. ("Illumina") and GRAIL, Inc. (now known as GRAIL, LLC) ("Grail", and with Illumina, "Petitioners") respectfully request that this Court expedite this appeal from a Final Order ("Order") and Opinion (collectively, the "Decision") of the Federal Trade Commission ("FTC" or "Commission") dated March 31, 2023.

## INTRODUCTION

This case involves a vertical transaction between two companies, Illumina and Grail (the "Transaction") that, if permitted, will revolutionize cancer care. Illumina founded Grail in 2015 with the goal of doing just that: making a test—accessible to all—that could detect early-stage cancer from a single blood test. Through Illumina's support (Illumina has always had a 12% equity stake in Grail) and billions in outside funding, Grail has come close: In 2021, Grail launched the Galleri test, which can detect 50 cancer types—and localize them—from one blood test. But that test is cost prohibitive for most Americans, it is not covered by insurance and it does not have FDA approval, all necessary steps in making the Galleri test the true "Holy Grail". To address those shortcomings, Illumina and Grail decided that Illumina would become the 100% owner of Grail, with the goal of saving thousands of lives, faster.

But the FTC had other plans.  It challenged the transaction, on an incomplete record, on the ground that it would be "anticompetitive".  However, the FTC's own chief administrative law judge (the "ALJ") conducted a lengthy trial of the FTC's allegations and rejected them on multiple grounds—marking the first time ever that the FTC's ALJ dismissed an FTC merger challenge.  Undeterred, the Commission overruled the ALJ (for the first time in a merger case), reiterated its own discredited allegations and ordered Illumina to divest Grail, preventing the companies from realizing the life-saving benefits of their combination.

The Commission's Decision suffers from many flaws—including that it is unconstitutional, misconstrues the antitrust laws and cherry picks from the administrative record—and should be reversed.  However, unless this appeal is expedited, there is a significant risk that the harms caused by the Commission's Decision will be materially worsened.  Thus, Petitioners respectfully request that the Court expedite the appeal.  There is good cause to do so, and no reason not to do so.  Patients, consumers and competition will benefit from expedited review.

## BACKGROUND

### A.     Illumina and Grail

Established in 1998, Illumina is a global leader in next generation sequencing ("NGS"), a cutting-edge technology for genetic and genomic analyses.  (Declaration of Dr. Alex Aravanis ¶ 4, attached as Exhibit A, dated April 3, 2023 ("Aravanis

Decl.").)  NGS sequencing enables the identification, measurement and comparison of genomic features such as DNA sequences, structural variation, gene expression and more.  (*Id.*)  This technology can be used for many downstream applications, including non-invasive prenatal genetic screening, and now, cancer screening.  (*Id.*)

In 2015, Illumina founded Grail with the goal of developing a multi-cancer early detection test ("MCED"):  a test which can identify a majority of known cancer types from a single blood sample.  (*Id.* ¶ 5.)  The company's name was based on the idea that detecting cancer through a blood test alone was the "Holy Grail" of cancer research.  *Id.*  Grail was a "moon-shot" mission, because it would require very costly studies to prove whether the idea would even work.  (*Id.* ¶ 6.)

In 2017, Illumina spun off Grail as a standalone company to allow it to obtain outside investment to fund the population-scale (*i.e.*, involving many thousands of patients) clinical trials needed to develop and validate its still nascent test.  (*Id.* ¶ 7.)  But Illumina has always remained tied to Grail's future success.  Illumina has maintained an equity interest of at least 12% in Grail, and, from the time it spun Grail off as a standalone company in 2017 up until it re-acquired Grail in 2021, Illumina retained the right to a substantial royalty from Grail's future revenues, in perpetuity.  (*Id.* ¶ 8.)

Through its fundamental research and population-scale trials, Grail has compiled an "atlas" of cancer signals in the blood with a machine learning platform

to develop its one-of-a-kind test, now called Galleri. (*Id.* ¶ 9.) Grail has demonstrated it can, from a single blood draw, simultaneously screen for more than 50 types of cancer in asymptomatic patients and accurately localize the cancer (*i.e.*, detect cancer signal of origin). (*Id.* ¶ 10.)

But there were limits on what Grail could achieve as an independent company. In June 2021, Grail launched Galleri as a laboratory developed test in the United States. (*Id.* ¶ 11.) However, given Grail's small size and scale, the Galleri test costs nearly $1,000 today and is not covered by most insurers, making it out of reach for all but the wealthiest Americans. (*Id.*) For these and other reasons, the Galleri test faces significant hurdles to wide-scale commercialization, including obtaining regulatory approvals, payor reimbursement and production and distribution of Galleri at scale. (*Id.* ¶ 12.)

**B.     The Transaction**

In September 2020, Illumina and Grail concluded that the best way to accelerate the adoption of Galleri was for the companies to fully re-unite. (*Id.* ¶ 13.) As the founder of Grail and a leader in NGS sequencing, Illumina is uniquely situated to help Galleri succeed. (*Id.*)

The companies concluded that Illumina's reacquisition of Grail in its entirety would accelerate the adoption of Galleri to all patients—not just wealthy ones. (*Id.* ¶ 14.) This widespread adoption would unlock the true "Holy Grail" by

reducing the cancer burden in the United States and worldwide, resulting in thousands of lives and billions of dollars in healthcare costs being saved. (*Id.*) Illumina's ownership of Grail would also lead to many other benefits (often known as "efficiencies" in antitrust parlance). With Illumina's ability to make Grail's supply chain and operations more efficient, Galleri will become cheaper for patients and have faster turnarounds, allowing individuals to get their critical cancer screening results quicker. (*Id.* ¶ 16.) Other cost savings will result from the elimination of double marginalization ("EDM"). (*Id.* ¶ 17.) That is, as a vertically integrated company, Grail and its patients will get the benefit of Illumina's products without Illumina's margin, another way that the cost of Galleri will be reduced. (*Id.* ¶ 17.)

While the Transaction closed in August 2021, Illumina has been required to hold Grail separate pending regulatory review by the European Commission ("EC"). Those requirements prevent Illumina from integrating Grail, and achieving the many benefits and cost savings for patients described above. Illumina has challenged the EC's assertion of jurisdiction to review the Transaction, and expects a decision from the European Court of Justice late this year or early next year. Should the Court of Justice agree with Illumina that the EC's assertion of jurisdiction is unlawful, the hold separate obligations (and related monitoring obligations) imposed by the EC will be lifted immediately.

### C.    The FTC's Challenge and The ALJ's Ruling

Although it is widely recognized that vertical mergers rarely harm competition and are typically pro-competitive, the FTC bucked this prevailing wisdom when it commenced litigation seeking to block (and later unwind) the Transaction.  It did so even though Illumina founded Grail and has always owned part of it, and—as the FTC's own counsel has conceded—there is no evidence Illumina's ownership of Grail has ever had any anticompetitive effect.

Rather than pursuing its case in an Article III federal court (where the FTC filed a case and then withdrew it), the FTC chose to try its claim before an FTC ALJ in its own in-house court, where it has never before lost a merger case.  Following extensive discovery, the ALJ conducted an exhaustive five-week trial.  The ALJ heard from 66 witnesses and received more than 4,500 exhibits into evidence.  Finding Illumina's witnesses credible and a number of the FTC's witnesses unreliable, the ALJ concluded—for the first time ever in a merger challenge—that the FTC failed to meet its *prima facie* burden.

Specifically, the ALJ concluded that the FTC failed to show that the Transaction may substantially lessen competition, including because it does not incentivize Illumina to harm any downstream customer.  The ALJ found that the FTC failed to carry its burden to show that the alleged foreclosure tactics the FTC claimed Illumina would engage in would actually benefit Illumina such that Illumina

would attempt to undertake them.  That is, the FTC needed to show that Illumina would sacrifice its profitable NGS business and suffer guaranteed losses—for the prospect of future profits from Grail—which currently loses more than $700 million per year.  The ALJ also found that Illumina's binding commitment (known as the "Open Offer")—open to any cancer screening test developer—to continue supplying NGS products without interruption and at pre-merger prices, among other protections, constrains Illumina from undertaking the alleged misconduct even if (contrary to fact and the ALJ's conclusions) Illumina were otherwise incented to attempt any foreclosure.

### D.   The Commission's Decision

Although the ALJ has many years of experience adjudicating merger challenges, and the Commission has upheld his findings and legal conclusions in numerous merger appeals—in fact, in ***every single other merger appeal***—the Commission reversed the ALJ's decision here.

In reversing the ALJ, the Commission committed at least five sets of legal and other errors, as follows:

1.   <u>Unconstitutionality/Impropriety of the Challenge.</u>  The Order violates Article I of the U.S. Constitution because it is the product of improperly delegated legislative power.  It violates Article II because FTC Commissioners exercise vast enforcement, investigative and prosecutorial authority while insulated from

removal.  It violates the Due Process Clause because the same Commissioners who voted out and/or prosecuted the complaint against Respondents adjudicated it; they judged the complaint themselves.  It violates the Equal Protection Clause because Respondents were subject to different treatment, and afforded fewer protections, than would have been the case in a challenge by the Department of Justice.

2.    <u>Legally Erroneous Relevant Markets.</u>    Even if the Order were constitutional, it is legally flawed and should be reversed because it depends on a mistaken definition of the relevant product market, and it concludes (incorrectly) that the FTC need not even prove a related product market.  While the ALJ found that each of Grail's purported rivals is years away from launching any kind of MCED test (much less one comparable to Galleri) and that the FTC failed to prove that any of these putative tests is "reasonably interchangeable" with Galleri, the Commission nevertheless found—erroneously—that there is a relevant market for the research, development and commercialization of MCED tests.

3.    <u>No Substantial Lessening of Competition.</u>  After a lengthy trial, the ALJ found that the FTC failed to show that the Transaction is reasonably likely to substantially lessen competition.  Even if the Commission's definition of the relevant product market were correct (it is not), there is no support for the Commission's conclusion that there would be a substantial lessening of competition here.  In particular, the Commission applied the wrong test for a vertical merger, and resorted

to untested and unsupported theories about future competition in deciding that Illumina would abandon current and near-term profitable NGS sales for the speculative hope of recouping those sales in the distant future. In doing so, while the Commission purported to rely on certain facts found by the ALJ, it cherry-picked the record to attempt to show that Grail's purported rivals are further along the development timeline than they really are.

4. <u>The Open Offer Addresses the Alleged Concern.</u> Even if Illumina had an incentive to attempt to foreclose purported Grail rivals by making its NGS products more expensive or foreclosing NGS supply or services, Illumina made a binding supply agreement (known as the "Open Offer") available to its oncology customers (and the oncology customers signed it). In particular, the Open Offer *requires* that Illumina make the same NGS products that it makes available to Grail available to all oncology customers, at the same or lower prices that those customers enjoyed before the Transaction. The ALJ concluded that the Open Offer *effectively constrains* Illumina from acting on its supposed incentive to foreclose, both in the short term and the long term. In reversing the ALJ's decision, the Commission ignored real world facts and turned the FTC's burden on its head: instead of requiring the FTC to prove that there would be substantial lessening of competition from the Transaction *despite* the Open Offer, the Commission required Respondents to show that the Open Offer would restore the competitive intensity that was

purportedly lost by the Transaction.  And, in finding that Respondents had not met that burden, the Commission ignored the undisputed record showing that—in the presence of the Open Offer—there was no evidence of any foreclosure or wrongdoing by Illumina.

5.  <u>Overwhelming Evidence of Efficiencies.</u>  Finally, the Commission erred because any alleged harm arising from the Transaction is outweighed by merger-specific efficiencies, including that the reunification of Illumina and Grail will save tens of thousands of lives in the United States and many more throughout the world.  In dismissing these efficiencies, the FTC misunderstood the law, disregarded the evidence and created another basis for reversal of its Decision.

### E.    **The Consequences of the Commission's Decision**

If the Commission's Decision is not reversed, it will preclude the enormous benefits of the Transaction.  Illumina will not be able to help Grail accelerate the adoption of Galleri sooner than Grail can achieve on its own; many people will be screened for cancers with an MCED test later than they otherwise would have been; Illumina and Grail will be unable to collaborate on new R&D innovations; consumers will not benefit from the elimination of double margins; and the companies will be unable to achieve the supply chain, operational and international efficiencies their combination will allow.  (Aravanis Decl. ¶¶ 19-21.)

As is further discussed below, expediting this appeal will permit review and reversal of the Commission's Decision, and therefore the achievement of these critical efficiencies, at the soonest possible time.  Petitioners have simultaneously moved the FTC to stay the FTC's Order pending this appeal.  Depending on the result of that motion and the schedule entered by this Court, Petitioners may move this Court to stay the FTC's Order pending appeal.

## <u>REASONS FOR GRANTING THE MOTION</u>

Under Fifth Circuit Rule 27.5, an appeal may be expedited upon a showing of "good cause".  5th Cir. R. 27.5 ("Only the court may expedite appeal and only for good cause."); *see also* Fed. R. App. P. 2 ("On its own or a party's motion, a court of appeals may—to expedite its decision or for other good cause . . . order proceedings as it directs."); Fed. R. App. P. 2 advisory committee's note to 1967 amendment ("The primary purpose of this rule is to make clear the power of the courts of appeals to expedite the determination of cases of pressing concern to the public or to the litigants by prescribing a time schedule other than that provided by the rules.").

Good cause exists to expedite this appeal.  Doing so will:  (i) save lives, if the Court agrees with Petitioners on the merits and Illumina and Grail are permitted to integrate and accelerate the adoption of Galleri; (ii) avoid unnecessary economic loss to Petitioners, consumers and the marketplace; (iii) minimize the harm resulting

from the constitutional violations on which the Commission's Decision is based; (iv) harm no one; and (v) serve the public interest.

Expediting this appeal will save lives.   There is no question that cancer screening saves lives and that accelerating the adoption of a cancer screening test will save still more lives.  (Aravanis Decl. ¶ 19.)  Nor is there any question that reuniting Illumina and Grail will accelerate the adoption of the Galleri test and thus save lives.  (*Id.*)  As soon as the companies are able to fully re-unite, Illumina—as a much larger company, an experienced global operator of NGS testing at scale and a leader in the genomics industry—will be able to bring to Grail unparalleled expertise in obtaining regulatory approvals, insurance reimbursement and operational capabilities that will help Grail bring its life-saving test to many more patients than it can on its own, sooner and at lower costs.

Although it is difficult to quantify with precision the full extent by which the Transaction will accelerate the wide-spread adoption of Galleri, it is conservatively estimated that a reunited Illumina and Grail will accelerate Galleri's adoption by at least one year, leading to an additional 10 million tests performed in the United States over a nine-year period (2022-2030), and saving thousands of lives in the United States alone.  (*Id.* ¶ 15.)

While the Commission's Decision and the EC's Order prevent Petitioners from fully reuniting to accelerate the adoption of Galleri, Petitioners are challenging

the EC's Order in Europe and are challenging the Commission's Decision by this appeal. If successful in both fora, Petitioners will be able to expand the availability and affordability of the Galleri test and get about the business of accelerating its adoption. (*Id.* ¶ 21.) Thus, the sooner the challenges can be resolved, the better—for Petitioners, for patients and for the fight against cancer.

Expediting this appeal will put the Court in a position to review the Commission's Decision promptly so that, if this Court rules for Petitioners and the European Court of Justice rules in Illumina's favor in the jurisdictional appeal, then the benefits of the Transaction can be realized at the earliest possible time. It is no exaggeration to say that expediting this appeal will save lives if Petitioners' views carry the day. (*See id.*) By contrast, the longer this appeal takes, the more the benefits of effective cancer screening will be delayed. (*See id.* ¶ 20.) Expediting the appeal will enable Petitioners to begin to realize these additional efficiencies more quickly, benefiting patients, consumers and competition—and most importantly, saving thousands of lives.

Expediting this appeal will minimize the economic loss to Petitioners, consumers and the marketplace. In addition to accelerating the adoption of Galleri and thus saving lives, the full reunification of Illumina and Grail will generate other efficiencies that will have a significant impact on Petitioners and consumers. The sooner the Court is able to resolve this appeal, the lesser the economic loss.

Among other things, the Transaction will result in elimination of double marginalization or EDM. (*Id.* ¶ 17.) EDM is a well-documented efficiency from a vertical transaction that occurs when an upstream firm acquires a downstream firm to which it supplies inputs. As separate companies (which, despite closing, the EC hold separate provisions perpetuate), Illumina charged a margin to Grail on sales of its NGS products, and Grail projected a margin on its products, which it prices into the cost of its test. Once reunited without the artificial impediments of a hold separate, the benefits from EDM can be realized. (*Id.* ¶¶ 17, 21.) The resulting consumer surplus over an eight-year period has been estimated at more than $600 million. (*Id.* ¶ 17.) The sooner the Court rules and Illumina and Grail integrate, the sooner cost savings from EDM can be passed on to consumers. (*Id.* ¶¶ 17, 21.)

What's more, accelerating this appeal will permit the supply chain and operating efficiencies that the combination will foster to be realized and shared with consumers earlier than if the appeal follows the regular course. (*Id.* ¶ 16.) The evidence adduced at trial showed that the Transaction will achieve significant supply chain efficiencies because Illumina has been operating in the NGS space for over a decade and has developed relationships with suppliers from whom it purchases in large volumes, whereas Grail is a young company with very limited sales. The Transaction will achieve significant operational efficiencies because Illumina has significant experience managing laboratories that operate NGS tests at scale,

whereas Grail has much more limited experience operating a clinical NGS laboratory. (*Id.*)

Expediting this appeal will minimize the harm resulting from the constitutional violations on which the Commission's Decision is based. As stated, the Commission's Decision violates multiple provisions of the U.S. Constitution.

- Article I, because it is the product of improperly delegated legislative power;

- Article II, because FTC Commissioners exercise vast enforcement, investigative and prosecutorial authority while insulated from removal;

- The Due Process Clause, because the same people who voted out and/or prosecuted the complaint against Petitioners adjudicated it; they judged the complaint themselves; and

- The Equal Protection Clause, because Petitioners were subject to different treatment, and afforded fewer protections, than they would have been/had in a challenge by the Department of Justice.

This Court's recent decision in *Jarkesy v. Securities & Exchange Commission*, 34 F.4th 446 (5th Cir. 2022), found similar action by the Securities and Exchange Commission unconstitutional on some of these same grounds.

It is well settled that violations of constitutional rights constitute irreparable harm. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) (noting that this principle is "well settled"). The harm that the Commission's Decision imposes on Petitioners is realized each day that passes without relief. *Cf.*

*Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 288 (5th Cir. 2012) ("Each day that passes without Opulent Life being able to occupy its new building is a day in which its religious free exercise is curtailed."). Expediting Petitioners' appeal will serve to limit the adverse impact of the constitutional violations here.

<u>Expediting this appeal will harm no one.</u>  Not only will accelerating this appeal avoid irreparable harm to Petitioners, enable the possibility of earlier access to a life-saving screening test and eliminate unnecessary roadblocks in the fight against cancer, but also it will not harm anyone. An order expediting the appeal would simply accelerate resolution of the case. Even if the FTC were correct that the Transaction, if permitted, would substantially lessen competition (and it is not), an early decision is better than a later one because a final judicial ruling in favor of the Commission would permit its Decision to be implemented. In short, all will benefit from a prompt resolution of the issues presented by this appeal.

Expedited review is likely to have benefits even beyond accelerating cancer screening. The Transaction will lead to considerable R&D efficiencies through the combination of Grail's expertise in methylation, data science and software development and Illumina's complementary expertise in sequencing and bioinformatics. (Aravanis Decl. ¶ 18.) Such innovations are expected to include: optimizing workflows in the processing of genomic tests; simplifying assays and

developing new components for assays; and identifying the genomic biomarkers in blood for other conditions like fatty liver disease, and neurological conditions like Alzheimer's and Parkinson's. (*Id.*) The sooner the Commission's Decision is reviewed, the sooner it can be reversed and the R&D synergies of the Transaction realized. (*Id.* ¶ 21.)

Expediting this appeal serves the public interest. For the same reasons discussed above, expediting this appeal will serve the public interest. If Petitioners are correct that the Transaction is pro-competitive and will save lives, then a final judicial determination reversing the Decision will remove a significant impediment to the realization of the Transaction's efficiencies, including those efficiencies that will save lives by accelerating the adoption of Galleri. (*See id.* ¶¶ 19, 21.) If, by contrast, the Commission prevails, expedition enables the Commission to have its Decision implemented sooner.

In deciding this case, the Court will be called upon to decide a number of issues that are important not only to the parties, but also to the public at large. Those issues include: whether the FTC's current practices run counter to the U.S. Constitution; whether a relevant antitrust market can be defined without regard to the traditional *Brown Shoe* factors*,* including product interchangeability; whether the FTC is empowered to stop a vertical merger based on speculation about future competition and on unproven theory and assumption without the balancing of

competing interests; whether a merger can be rejected without regard to the real-world facts, such as binding contractual commitments; and whether a transaction's efficiencies can be ignored in determining whether, on balance, it will substantially lessen competition.

Counsel for the FTC has advised Petitioners, without explanation, that the FTC opposes this motion and an expedited appeal. The FTC's lack of an explanation as to why it opposes this motion is telling. There is no credible reason to oppose expedition other than to delay the resolution of this appeal.

Petitioners do not seek an emergency stay of the Commission's Decision by way of this motion. The divestiture provisions of the Commission's order are stayed automatically pending appeal, and a request for a stay of the non-divestiture provisions is premature. Petitioners have sought a stay before the Commission in the first instance (in an effort to exhaust administrative remedies), and the Commission has not yet ruled on that request. In the event that the Commission denies Petitioners' request for a stay of the non-divestiture obligations pending appeal, Petitioners will seek a stay of those obligations from this Court at the appropriate time.

## PRAYER FOR RELIEF

For all the foregoing reasons, Petitioners respectfully request that the Court enter an expedited briefing schedule. Under Federal Rule of Appellate Procedure

17(a), the FTC is required to file the record within 40 days of being served with a Petition for Review. Petitioners filed their Petition for Review in this action on April 4, 2023 (yesterday), the day after the Decision was made available to them (and 59 days before the deadline for a Petition for Review). Petitioners' appeal has been docketed and the FTC has been served by the Circuit Clerk pursuant to Federal Rule of Appellate Procedure 15(c), with the last day for the FTC to file the record listed on the docket as May 15, 2023. Petitioners respectfully request the Court order:

1. Petitioners' principal brief be filed by June 5, 2023 (21 days after the deadline for the record to be filed, and 19 days before it would be due in the ordinary course);

2. Respondents' response brief to be filed by June 26, 2023 (21 days after Petitioners' principal brief is filed, and 9 days before a response brief would be due in the ordinary course);

3. Petitioners' reply brief to be filed by July 11, 2023 (15 days after Respondents' response brief is filed, and 7 days before it would be due in the ordinary course).

Dated:  April 5, 2023                    Respectfully submitted,


                                         /s/ *David R. Marriott*
                                         David R. Marriott
                                         Christine A. Varney
                                         Sharonmoyee Goswami
                                         Michael J. Zaken
                                         Jesse M. Weiss
                                         CRAVATH, SWAINE & MOORE LLP
                                         Worldwide Plaza
                                         825 Eighth Avenue
                                         New York, NY 10019
                                         Telephone:  (212) 474-1000


                                         *Counsel for Petitioner Illumina, Inc.*


                                         Michael G. Egge
                                         Marguerite M. Sullivan
                                         Anna M. Rathbun
                                         David L. Johnson
                                         LATHAM & WATKINS LLP
                                         555 Eleventh Street NW
                                         Suite 1000
                                         Washington, D.C. 20004
                                         Telephone:  (202) 637-2200

                                         Alfred C. Pfeiffer
                                         LATHAM & WATKINS LLP
                                         505 Montgomery Street
                                         Suite 2000
                                         San Francisco, CA 94111-6538
                                         Telephone:  (415) 391-0600


                                         *Counsel for Petitioner GRAIL, LLC*

## **CERTIFICATE OF CONFERENCE**

Pursuant to Fifth Circuit Rule 27.4, I certify that on March 31, 2023, counsel for Illumina contacted Joel Marcus-Kurn, counsel for Appellee Federal Trade Commission.  Mr. Marcus-Kurn later responded that Respondents do not agree to expedite this appeal.

Dated:  April 5, 2023                /s/  *David R. Marriott*

David R. Marriott

*Counsel for Petitioner Illumina, Inc.*

## **CERTIFICATE OF SERVICE**

This is to certify that the foregoing instrument has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on April 5, 2023, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

/s/ *David R. Marriott*
David R. Marriott

*Counsel for Petitioner Illumina, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.     This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure and Fifth Circuit Rule 32.1:

> this document contains 4,410 out of the allotted 5,200 words.

2.     This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5), and Fifth Circuit Rule 32.1 and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because:

> this document has been prepared in a proportionally spaced typeface using Microsoft 365 MSO (Version 2208) with Times New Roman font, regular typeface and font size 14.

*/s/  David R. Marriott*
David R. Marriott

*Counsel for Petitioner Illumina, Inc.*