

Office of the General Counsel

UNITED STATES OF AMERICA
Federal Trade Commission
Washington, D.C. 20580

October 25, 2023

Lyle W. Cayce
Clerk of the Court
United States Court of Appeals for the Fifth Circuit
600 S. Maestri Place
New Orleans, LA 70130-3408

  Re:  *Illumina, Inc. v. FTC*, No. 23-60167 (argued Sept. 12, 2023)

Dear Mr. Cayce:

  This letter responds to the Court's order of October 18, 2023, requesting an update on the status of proceedings before the European Commission ("EC") and the impact, if any, of the EC's order of October 12, 2023, on this case.

  The EC's order and relevant background are summarized in the EC press release that accompanied the October 12 order (attached as Exhibit A hereto). Briefly, the EC had previously prohibited Illumina's acquisition of Grail over concerns that it would stifle innovation and reduce competition in the emerging market for MCED tests. It also fined Illumina €432 million and Grail €1,000 for completing the acquisition in violation of their standstill obligation under European law. The October 12 order requires Illumina to unwind its acquisition of Grail and imposes transitional measures requiring Illumina to hold Grail as a separate entity and maintain its viability in the meantime. These transitional measures supersede the hold-separate obligations in the EC's previous interim orders.

  Illumina has challenged the EC's jurisdiction to review its acquisition of Grail. On July 13, 2022, the European General Court upheld the EC's jurisdiction. Illumina is seeking review of that decision in the European Court of Justice ("ECJ"), which is the highest court of the European Union. The FTC's understanding is that a decision in favor of Illumina in that appeal will void the October 12 divestiture order. Illumina has publicly stated in a press release (Exhibit B hereto) that "if Illumina is not successful with either its ECJ jurisdictional appeal or in a final decision of the U.S. Fifth Circuit Court of Appeals, the company will divest GRAIL."

  Because Illumina is continuing to challenge the EC's jurisdiction, the issuance of the October 12 order does not moot this case. Moreover, the timing of any decision by the ECJ is uncertain. No date has been set for a hearing, and the FTC does not expect a decision before mid-2024 at the earliest. Under these

Lyle W. Cayce
October 25, 2023
Page 2

circumstances, the FTC does not believe that the October 12 order should affect this Court's timetable for deciding this case.

Respectfully,

/s/ Anisha S. Dasgupta

Anisha S. Dasgupta
General Counsel
Federal Trade Commission

Cc: Counsel of record (via CM/ECF)

**EXHIBIT A**



**European Commission - Press release**



# Commission orders Illumina to unwind its completed acquisition of GRAIL

Brussels, 12 October 2023

Today, the European Commission has adopted, under the EU Merger Regulation ('EUMR'), **restorative measures** requiring Illumina to unwind its completed acquisition of GRAIL, following the Commission's decision to prohibit the transaction.

On 6 September 2022, the Commission **prohibited** the acquisition of GRAIL by Illumina over concerns that the merger would have stifled innovation and reduced choice in the emerging market for blood-based early cancer detection tests. Illumina and GRAIL unlawfully completed the merger during the Commission's in-depth investigation, in breach of EU merger control rules. In July 2023, the Commission fined both companies for implementing their proposed merger before approval by the Commission.

**The decision**

With today's decision, the Commission has adopted **restorative measures** requiring Illumina to divest GRAIL and **restore the situation** prevailing before the completion of the acquisition.

The Commission thus orders the following measures: (i) **divestment measures** requiring Illumina to unwind the transaction with GRAIL; and (ii) **transitional measures** that Illumina and GRAIL need to comply with until Illumina has dissolved the transaction.

Specifically, the **divestment measures** must be implemented in line with the following principles:

- First, the dissolution of the transaction must **restore GRAIL's independence from Illumina** to the same level enjoyed by GRAIL prior to the acquisition. Restoring GRAIL's independence will remove the harm to competition resulting from Illumina's ability and incentive to delay or disadvantage GRAIL's rivals.
- Second, **GRAIL must be as viable and competitive** after the divestment as it was before Illumina's acquisition. This will ensure that the innovation race between GRAIL and its rivals can continue in conditions similar to those in place before the transaction.
- Finally, the **divestment must be executable within strict deadlines and with sufficient certainty**, so that the pre-transaction situation can be restored in a timely manner.

Illumina can choose the appropriate divestment methods (e.g., via a trade sale, a capital markets transaction), provided that it follows all the principles mentioned above. Illumina has to submit a concrete divestment plan for the disposal of GRAIL, which **must be approved by the Commission**.

As regards the **transitional measures:**

- They will ensure that **Illumina and GRAIL remain separate** until the transaction is unwound in order to prevent further integration of GRAIL into Illumina's business and subsequently irreparable harm to competition.
- They also oblige Illumina to maintain **GRAIL's viability** by continuing to fund GRAIL's cash needs on an ongoing basis to allow it to further develop and launch its early cancer detection test Galleri.
- They will **replace the interim measures** adopted by the Commission on 28 October 2022 and that are currently in force.

In case of non-compliance with the restorative measures, the Commission can impose periodic penalty payments of up to 5% of the average daily aggregate turnover of the company under Article 15 EUMR. Moreover, companies failing to comply with the restorative measures can be fined up to 10% of their annual worldwide turnover under Article 14 of the EUMR.

**Companies and products**

**Illumina**, headquartered in the US, is a global genomics company, which develops, manufactures and commercialises next generation sequencing ('NGS') systems, including sequencing instruments,

consumables and related services. Illumina's NGS systems are medical devices used in a variety of applications, including by customers in the oncology space that develop and run blood-based tests that can detect cancer or select appropriate therapies for cancer patients.

**GRAIL**, also headquartered in the US, is a healthcare company developing blood-based cancer tests based on genomic sequencing and data science tools. GRAIL's flagship product is "Galleri", an early multi-cancer detection test, whose purpose is to detect around 50 cancers in asymptomatic patients from a blood sample.  In April 2021, GRAIL initiated a limited commercialisation of Galleri in the US. GRAIL has two additional pipeline products: (i) a diagnostic aid for cancer testing used to confirm a diagnosis of cancer in symptomatic patients, and (ii) a minimal residual disease test, to detect potential relapse in patients after cancer treatments. GRAIL was founded by Illumina in 2016, and was spun off later in the same year.

**Background**

*The Illumina/GRAIL merger case*

Following a referral request from six Member States, on 19 April 2021 the Commission accepted to review the proposed acquisition of GRAIL by Illumina and opened an in-depth investigation on 22 July 2021. On 13 July 2022, the General Court confirmed the Commission's jurisdiction to review the transaction.

While the Commission's in-depth investigation was still ongoing, Illumina publicly announced that it had completed its acquisition of GRAIL. As a result, on 29 October 2021, the Commission adopted interim measures to ensure that Illumina and GRAIL would remain separate pending the outcome of the Commission's merger investigation.

On 6 September 2022, the Commission prohibited the implemented acquisition of GRAIL by Illumina over concerns that the merger would have stifled innovation and reduced choice in the emerging market for blood-based early cancer detection tests. Following the prohibition decision, the Commission renewed and adjusted the interim measures on 28 October 2022.

On 5 December 2022, the Commission sent a Statement of Objections to Illumina and GRAIL outlining the restorative measures it intended to adopt.

Furthermore, on 12 July 2023, the Commission fined Illumina and GRAIL €432 million and €1,000 respectively, for implementing their proposed merger before approval by the Commission, in breach of EU merger control rules.

*Procedural background*

The obligation not to implement a notifiable transaction either before its notification or before it has been declared compatible with the common market is laid down in Article 7(1) of the EU Merger Regulation ('EUMR'). This standstill obligation prevents potentially irreparable negative impact of transactions on the market, as well as possible irreversible integration of merging parties, pending the outcome of the Commission's merger investigations.

Compliance with the standstill obligation is essential for legal certainty, enables the Commission to conduct a correct analysis of the impact of mergers in the market and prevents the potentially detrimental impact of transactions on the competitive structure of the market. In this way, market forces work for the benefit of consumers. In cases where the standstill obligation has not been respected, and the Commission subsequently decides to prohibit the merger, it is necessary to adopt measures restore the situation pre-transaction.

Article 8(4)(a) of the EUMR authorises the Commission to take appropriate restorative measures to restore the situation prevailing prior to the implementation of the concentration where the Commission finds that a concentration has already been implemented and that concentration has been declared incompatible with the internal market.

More information will be available on the Commission's competition website, in the Commission's public register under the case number M.10939.



IP/23/4872

Quotes:

Today's decision restores competition in the development of early cancer detection tests. These tests could represent a breakthrough in our fight against cancer. By ordering Illumina to restore GRAIL's independence, we ensure a level playing field in this crucial market to the ultimate benefit of European consumers.
Commissioner Didier Reynders, in charge of competition policy - 12/10/2023

Press contacts:

Daniel FERRIE (+32 2 298 65 00)
Sara SIMONINI (+32 2 298 33 67)

General public inquiries: Europe Direct by phone 00 800 67 89 10 11 or by email

**EXHIBIT B**

PRESS RELEASE

# Illumina responds to European Commission's divestiture order

Oct 13, 2023

SAN DIEGO, Oct. 13, 2023 /PRNewswire/ -- Illumina, Inc. (NASDAQ:ILMN), has received an order from the European Commission (EC) directing the company to divest GRAIL.

Receipt of the order is an important next step in evaluating divestiture options for GRAIL. Illumina is committed to resolving all issues regarding GRAIL in a timely manner, with the objective of achieving the maximum value for shareholders and the best outcome for GRAIL. Notably, the terms of the order provide for flexibility in transaction structure, an encouraging outcome from Illumina's ongoing dialogue with the EC.

Under the terms of the EC's order, Illumina will have twelve months to divest GRAIL, with the potential for a three-month extension, and will be permitted to explore a range of structures including, but not limited to, a third-party sale or a capital markets transaction. Illumina will lead the divestiture process and, with the assistance of financial and legal advisors, has already begun the preparatory work necessary for divestment, if needed.

Consistent with the previous interim measures orders, Illumina is required to continue funding GRAIL until any divestiture. In the instance of a capital markets transaction, Illumina must capitalize GRAIL at the time of the transaction with two-and-a-half years of funding based on GRAIL's long-range plan. The order also provides for Illumina to retain a stake in GRAIL of up to 14.5% and reestablish the royalty arrangement it previously had in place with GRAIL.

Illumina maintains that the Commission does not have jurisdiction over this acquisition. The company's jurisdictional challenge remains pending at the European Court of Justice (ECJ).

If Illumina wins its jurisdictional challenge at the ECJ, the basis for the EC's divestiture order would be eliminated. However, if Illumina is not successful with either its ECJ jurisdictional appeal or in a final decision of the U.S. Fifth Circuit Court of Appeals, the company will divest GRAIL.

Illumina's third quarter 2023 earnings call is scheduled for November 9, and company leaders will respond to further questions from the investment community at that time.

**Cautionary Note on Forward-Looking Statements**
This release may contain forward-looking statements that involve risks and uncertainties. Among the important factors to which our business is subject that could cause actual results to differ materially from those in any forward-looking statements are: (i) our ability to agree on a divestment plan with the European Commission pursuant to the divestiture order it has issued; (ii) our ability to timely execute a strategic alternative that maximizes the value of GRAIL to our stockholders given the parameters required by the divestiture order; (iii) the risk that ongoing legal proceedings challenging the decisions of the European Commission and the U.S Federal Trade Commission do not result in favorable outcomes for us; (iv) the risk that distractions associated with the potential divestment of GRAIL and associated legal proceedings or regulatory obligations will harm our business, including current plans and operations, together with other factors detailed in our filings with the Securities and Exchange Commission, including our most recent filings on Forms 10-K and 10-Q, or in information disclosed in public conference calls, the date and time of which are released beforehand. We undertake no obligation, and do not intend, to

RECENT ARTICLES

Select an area of interest



[Video: Illumina highlights the importance of HRD testing at ESMO 2023](#)



[Aegis writes a new chapter on pathogen surveillance](#)



[The future of sustainable mining belongs to the microbe](#)

SHARE



update these forward-looking statements, to review or confirm analysts'
expectations, or to provide interim reports or updates on the progress of the current
quarter.

**Cautionary Note on Statements of Opinion**
In addition to forward-looking statements, this release contains statements of
opinion with which all may not agree.

**About Illumina**
Illumina is improving human health by unlocking the power of the genome. Our focus
on innovation has established us as a global leader in DNA sequencing and array-
based technologies, serving customers in the research, clinical, and applied markets.
Our products are used for applications in the life sciences, oncology, reproductive
health, agriculture, and other emerging segments. To learn
more, visit illumina.com and connect with us
on Twitter, Facebook, LinkedIn, Instagram, TikTok and YouTube.

**Investors:**
Salli Schwartz
858-291-6421
IR@illumina.com

**Media:**
David McAlpine
347-327-1336
PR@illumina.com

 View original content:https://www.prnewswire.com/news-releases/illumina-
responds-to-european-commissions-divestiture-order-301956469.html

SOURCE Illumina, Inc.

illumına

INNOVATIVE TECHNOLOGIES

At Illumina, our goal is to apply innovative technologies to the analysis of genetic
variation and function, making studies possible that were not even imaginable just a
few years ago. It is mission critical for us to deliver innovative, flexible, and scalable
solutions to meet the needs of our customers. As a global company that places high
value on collaborative interactions, rapid delivery of solutions, and providing the
highest level of quality, we strive to meet this challenge. Illumina innovative sequencing
and array technologies are fueling groundbreaking advancements in life science
research, translational and consumer genomics, and molecular diagnostics.

All trademarks are the property of Illumina, Inc. or their respective owners.
For specific trademark information, see www.illumina.com/company/legal.html.

Cookies Settings    Privacy Policy

© 2023 Illumina, Inc. All rights reserved.

For Research Use Only

Not for use in diagnostic procedures
(except as specifically noted).

Careers
Contact Us

